# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

**JOHN ALLEN RUBIO,**
      Petitioner,

    *v.*

**BOBBY LUMPKIN, Director,**
Texas Department of
Criminal Justice,
Correctional Institutions Division,
      Respondent.

Case No. 1:18-CV-00088

District Judge Rolando Olvera

## MOTION FOR STAY AND ABEYANCE
## OF FEDERAL HABEAS PROCEEDINGS

Lee B. Kovarsky
*Principal*
Phillips Black, Inc.
Texas Bar No. 24053310
727 East Dean Keeton St, Jon 6.222
Austin, TX 78705
434-466-8257 (tel.)
l.kovarsky@phillipsblack.org

Kristin Swain
*Associate*
Phillips Black, Inc.
PO Box 8745
Saint Louis, MO 63101
(888) 532-0897
k.swain@phillipsblack.org

JASON D. HAWKINS
Federal Public Defender

JEREMY SCHEPERS
Supervisor, Capital Habeas Unit

Jessica Graf (TX 24080615)
Derek VerHagen (TX 24090535)
Assistant Federal Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746 (phone) 214-767-2886 (fax)
jessica_graf@fd.org
derek_verhagen@fd.org

## THIS IS A CAPITAL CASE

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................... i

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................... 1

ARGUMENT ...................................................................................................... 2

    I.    There is good cause for failure to present the pertinent claims in
        state court ............................................................................................... 4

        A.    State post-conviction counsel's inadequate performance is
               good cause for failure to raise unexhausted IATC Claims
               1, 3, 7, and 10 ............................................................................ 5

        B.    State post-conviction counsel's inadequate performance is good
               cause for failure to raise unexhausted (Non-IATC) Claims
               4, 5, 6, 8, and 9 ........................................................................ 5

        C.    There is good cause, unassociated with deficiencies in state
               post-conviction counsel's performance, for failure to present
               Claims 4 and 5 .......................................................................... 7

    II.    The claims are not plainly meritless and a state remedy exists ............ 7

        A.    The unexhausted claims are not frivolous ................................. 8

        B.    There is a nontrivial chance that the TCCA would authorize
               litigation ................................................................................... 8

    III.    There is no indication that Rubio has abusively and intentionally
         engaged in delay .................................................................................. 16

CONCLUSION ................................................................................................. 17

CERTIFICATE OF CONFERENCE ................................................................. 19

CERTIFICATE OF SERVICE .......................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Blake v. Baker,*
   745 F.3d 977 (9th Cir. 2014) .................................................................................... 4, 5

*Canales v. Quarterman,*
   No. 2:03-cv-069, 2007 WL 922150 (E.D. Tex. Mar. 23, 2007) ................................. 8

*Coleman v. Thompson,*
   501 U.S. 722 (1991) ................................................................................................ 11

*Evitts v. Lucey,*
   469 U.S. 387 (1985) ................................................................................................ 15

*Hall v. Thaler,*
   504 F. App'x 269 (5th Cir. 2012) ............................................................................... 4

*Leachman v. Davis,*
   699 F. App'x 441 (5th Cir. 2017) ............................................................................... 4

*Lopez v. Stephens,*
   No. CV B-15-144, 2016 WL 4126014 (S.D. Tex. Apr. 25, 2016) .............................. 4

*Martinez v. Ryan,*
   566 U.S. 1 (2012) ....................................................................................... 5, 6, 12, 14

*Murphy v. Thaler,*
   No. 3:10-CV-163, 2010 WL 2381500 (N.D. Tex. June 8, 2010) ............................... 8

*Neville v. Dretke,*
   423 F.3d 474 (5th Cir. 2005) .................................................................................. 7, 8

*Norman v. Stephens,*
   817 F.3d 226 (5th Cir. 2016) ..................................................................................... 5

*Pace v. DiGuglielmo,*
   544 U.S. 408 (2005) ................................................................................................... 4

*Rhines v. Weber,*
   544 U.S. 269 (2005) ..........................................................................................*passim*

*Rose v. Lundy,*
   455 U.S. 509 (1982) ................................................................................................ 2, 3

*Ruiz v. Quarterman*,
    504 F.3d 523 (5th Cir. 2007) ....................................................... 4, 5, 6, 7

*Schillereff v. Quarterman*,
    304 F. App'x 310 (5th Cir. 2008) ............................................................ 4

*Trevino v. Thaler*,
    569 U.S. 413 (2013) ............................................................*passim*

*Young v. Stephens*,
    795 F.3d 484 (5th Cir. 2015) .................................................................. 3

**State Cases**

*Ex parte Alvarez*,
    468 S.W.3d 543 (Tex. Crim. App. 2015)............................. 10, 11, 13, 15

*Ex parte Buck*,
    418 S.W.3d 98 (Tex. Crim. App. 2013).................................................. 11

*Ex parte Foster*,
    No. WR-65,799-02, 2010 WL 5600129 (Tex. Crim. App. Dec. 30, 2010) .............. 14

*Ex parte Graves*,
    70 S.W.3d 103 (Tex. Crim. App. 2002)...........................................*passim*

*Ex parte Medina*,
    361 S.W.3d 633 (Tex. Crim. App. 2011)................................................. 13

*Ex parte Ruiz*,
    543 S.W.3d 805 (Tex. Crim. App. 2016)........................................... 10, 11

*Ex parte Torres*,
    943 S.W.2d 469 (Tex. Crim. App. 1997)................................................. 11

**Federal Statutes**

28 U.S.C. § 2244(d) ........................................................................... 2

**State Statutes**

TEX. CODE CRIM. PRO. ART. 11.071 .................................................... 15

TEX. CODE CRIM. PRO. ART. 11.071 §§ (2)(a), 3(a).................................. 15

TEX. CODE CRIM. PRO. ART. 11.071 § 5 ...................................... 1, 8, 9, 11

TEX. CODE CRIM. PRO. ART. 11.071, § 5(a) ..................................................... 9

TEX. CODE CRIM. PRO. ART. 11.071 § 5(a)(1) ............................................. 13, 16

TEX. CODE CRIM. PRO. ART. 11.071, § 5(e) ............................................... 9, 14

**Constitutional Provisions**

U. S. CONST. amend. VI ........................................................... 1, 2, 10, 11

U. S. CONST. amend. XIV ................................................................... 1

## INTRODUCTION

Petitioner John Allen Rubio, by and through his undersigned counsel, and pursuant to the procedure approved in *Rhines v. Weber*, 544 U.S. 269 (2005), moves this Court to stay and hold in abeyance his federal habeas proceedings to permit him to present his unexhausted claims to the state court. This Motion is based on the files and records in this case and the following points and authorities.

In his Amended Petition for Writ of Habeas Corpus (ECF. No. 24)[1], Rubio sets forth several meritorious claims that were not raised in state post-conviction proceedings, and that are subject to authorization under Article 11.071 § 5, of the Texas Code of Criminal Procedure:

> **Claim 1:** Rubio's Sixth Amendment right to counsel was violated because the defense failed to include a mental health expert as a member of the defense team.
>
> **Claim 3:** Rubio's Sixth Amendment right to counsel was violated because the defense failed to investigate and prepare for his guilt/innocence phase defense.
>
> **Claim 4:** Rubio's right to due process under the Fourteenth Amendment was violated when the State engaged in a flagrant and ongoing pattern of misconduct.
>
> **Claim 5:** Rubio's right to equal protection under the Fourteenth Amendment was violated when the State pursued the death penalty against him because of his indigent status and on the basis of a survey.
>
> **Claim 6:** Rubio's due process rights, as set forth in *Napue v. Illinois*, were violated when the State elicited testimony that it knew, or should have known, to be false and misleading.

---

[1] Citations to other pleadings filed in this case will be styled as "ECF Doc. [#] at [page #]." The page number cited will be the ECF page number listed at the top right corner of the document.

**Claim 7:** Rubio's Sixth Amendment right to counsel was violated because the defense failed to investigate and present evidence related to Rubio's mental health during his prior incarceration.

**Claim 8:** Rubio's due process rights, as set forth in *Napue v. Illinois*, were violated when the State elicited false testimony from A.P. Merillat.

**Claim 9:** Rubio's due process rights, as set forth in *Brady v. Maryland*, were violated when the State failed to disclose Merillat's false testimony in *Velez*.

**Claim 10:** Rubio's Sixth Amendment right to counsel was violated because the defense failed to prepare for, and rebut, Merillat's false testimony during the punishment phase.

As explained below, the *Rhines* stay necessary to litigate the "Unexhausted Claims" in state court avoids (1) the inequitable and inefficient process of requiring that a "mixed" petition, i.e. one containing both exhausted and unexhausted claims, be dismissed in its entirety; and (2) the risk that this Court erroneously declare a claim exhausted and procedurally defaulted when state remedies remain and state courts would in fact consider it on the merits.

## ARGUMENT

Before the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts applied a "total exhaustion" rule pursuant to which they would dismiss, without prejudice, "mixed" federal petitions that contained both exhausted and unexhausted claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). AEDPA, however, "dramatically altered the landscape for federal habeas corpus petitions," and imposed a one-year limitations period for the filing of federal petitions. *Rhines*, 544 U.S. at 274; *see also* 28 U.S.C. § 2244(d) (limitations provisions). In *Rhines*, the Supreme

Court explained that *Lundy* unfairly combined with the limitations period to threaten claims in mixed petitions:

> As a result of the interplay between AEDPA's 1-year statute of limitations and [the total exhaustion requirement], petitioners who come to federal court with "mixed" petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims. If a petitioner files a timely but mixed petition in federal district court, and the district court dismisses it under *Lundy* after the limitations period has expired, this will likely mean the termination of any federal review.

544 U.S. at 275. Without a mechanism to allow the unexhausted claims to be included in a timely petition, prisoners would simply have to omit them to avoid dismissal. To avoid this unforeseen problem, the Supreme Court unanimously approved a stay-and-abeyance procedure in *Rhines*. 544 U.S. at 279. "Under this procedure, rather than dismiss the mixed petition pursuant to *Lundy*, a district court might stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* at 275.

A *Rhines* stay is appropriate here. In the Fifth Circuit, a *Rhines* stay is appropriate when: "(1) the district court determines there was good cause for the petitioner's failure to exhaust his claims in state court; (2) the claim is not plainly meritless; and (3) there is no indication that the petitioner is engaging in abusive litigation tactics or intentional delay." *Young v. Stephens*, 795 F.3d 484, 495 (5th Cir. 2015) (citing *Rhines*, 544 U.S. at 277–78) (alterations and internal quotation marks omitted).[2] Mr. Rubio meets all three prongs with respect to the Unexhausted Claims.

---

[2] *See Rhines*, 544 U.S. at 278 ("[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and

### I.      There is good cause for failure to present the pertinent claims in state court.

The Fifth Circuit has held that *Rhines* does not require "good cause" in some "technical sense," but "rather intended the district court [to] find 'good cause' in the equitable sense." *Ruiz v. Quarterman*, 504 F.3d 523, 529 n.17 (5th Cir. 2007). For that reason, the good-cause showing necessary for a *Rhines* stay is *lower* than the cause showing necessary to excuse procedural default. *See id.* The requirement focuses on the reason for not presenting a claim in the state post-conviction proceeding. Showing good cause requires "a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)). "Good cause for [a *Rhines* stay] should not require an extraordinary or unreasonable showing." *Lopez v. Stephens*, No. CV B-15-144, 2016 WL 4126014, at *4 (S.D. Tex. Apr. 25, 2016).[3] For ease of understanding, the subsections that follow are divided into material applicable to ineffective-assistance-of-trial-counsel ("IATC") claims and material applicable to non-IATC claims.

---

there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.").

[3] The Fifth Circuit has suggested, for example, that good cause might be lacking in a case where: there was "no explanation for [a prisoner] waiting more than a year to file his state habeas application[,]" *Schillereff v. Quarterman*, 304 F. App'x 310, 314 (5th Cir. 2008); a prisoner failed to exhaust because of "confusion" about state administrative exhaustion requirements, *Leachman v. Davis*, 699 F. App'x 441, 442 (5th Cir. 2017); or when claims remain unexhausted because the state prisoner requested dismissal of a state post-conviction application, *Hall v. Thaler*, 504 F. App'x 269, 284 (5th Cir. 2012).

### A. State post-conviction counsel's inadequate performance is good cause for failure to raise unexhausted IATC Claims 1, 3, 7, and 10.

It is by now well established that ineffectiveness of state post-conviction counsel can be cause for having not presented an IATC claim to a Texas court. *See Trevino v. Thaler*, 569 U.S. 413, 417 (2013); *Norman v. Stephens*, 817 F.3d 226, 232 (5th Cir. 2016). The ineffectiveness of state post-conviction counsel that demonstrates cause necessary to excuse procedural default also shows cause necessary to grant a *Rhines* stay. *See Ruiz*, 504 F.3d at 529 n.17; *see also Blake*, 745 F.3d at 983–84 (holding district court had abused its discretion when it determined that a *Martinez* excuse would not show cause for *Rhines* purposes). Indeed, this Court should find good cause for *Rhines* purposes even if it expects that it might not find that state post-conviction counsel's performance rises to a level that would excuse procedural default. The material pertaining to state post-conviction counsel's performance is set forth in the Amended Petition (ECF Doc. 24 at 65–68, 116, 157, 172–73) and the contemporaneously-filed Reply (ECF Doc. 41 at 36–38, 89–90, 138–40, 148–50), and that material demonstrates the cause necessary to grant a *Rhines* stay as to the Unexhausted IATC claims: Claims 1, 3, 7, and 10.

### B. State post-conviction counsel's inadequate performance is good cause for failure to raise unexhausted (Non-IATC) Claims 4, 5, 6, 8, and 9.

As noted above, cause that excuses procedural default is sufficient to show cause for a *Rhines* stay, but it is not *necessary*. *See Ruiz*, 504 F.3d at 529 n.17. As explained in the Amended Petition, Rubio acknowledges that neither the Supreme

Court nor the Fifth Circuit has yet held ineffectiveness of state post-conviction counsel can be cause for forfeiting any non-IATC claims. ECF Doc. 24 at 129 n. 80, 140 n. 97. But because the cause showing for *Rhines* is lower than the showing for cause under procedural default, this Court should permit exhaustion of *other claims that could not have been asserted* at trial.

Even the most ardent Justices opposing *Martinez* and *Trevino* concede that, from an equitable perspective—the perspective required by *Ruiz*—"[t]here is not a dime's worth of difference in principle between those cases and many other cases in which initial state habeas will be the first opportunity for a particular claim to be raised[.]" *Martinez v. Ryan*, 566 U.S. 1, 19 (2012) (Scalia, J., dissenting). These Justices explained that it "insults the reader's intelligence" to posit a meaningful difference between permitting ineffective state post-conviction performance to show cause for excusing default of IATC claims, but refusing to permit it to show cause for excusing default of prosecutor misconduct claims. *See id.*

The performance of Rubio's state post-conviction counsel should allow him to return to state court to seek remedies on his non-IATC claims for two reasons. First, as set forth in his pleadings, this Court should find that ineffective state post-conviction counsel excuses forfeiture of non-IATC claims that could not have been asserted on direct review. Second, even if this Court does not so find, it should still find good cause under *Rhines* because that showing is less than what is necessary to excuse a procedural default. As a result, this Court should find that good cause exists with respect to non-IATC Claims 4, 5, 6, 8, and 9.

6

### C. There is good cause, unassociated with deficiencies in state post-conviction counsel's performance, for failure to present Claims 4 and 5.

For the reasons set forth in the contemporaneously-filed Reply, there was cause for failing to present non-IATC Claims 4 and 5 in the initial state application. ECF Doc. 41 at 104–06, 122–23. Specifically, reasonably diligent counsel could not have known that the subsequently-imprisoned District Attorney had polled his jurisdiction to determine whether a capital prosecution of Rubio would be politically popular. Even if this Court expects that it might not find that such circumstances excuse procedural default, it should still find good cause for *Rhines* purposes because the cause threshold for that rule is lower. *See* 504 F.3d at 529 n.17.

## II.    The claims are not plainly meritless and a state remedy exists.

To obtain a *Rhines* stay, Rubio must show that at least one of his unexhausted claims is "potentially meritorious." 544 U.S. at 277. A claim is "potentially meritorious" under *Rhines* as long as it is not "plainly meritless." *Id*. Under Fifth Circuit law, a showing of merit refers not only to the elements of the constitutional violation asserted, but also to whether the Texas Court of Criminal Appeals ("TCCA") would authorize subsequent litigation in state court. *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). A *Rhines* movant must therefore show the non-triviality of: (1) the underlying constitutional claim; and (2) the argument that the TCCA would authorize the litigation.

### A. The unexhausted claims are not frivolous.

With respect to the merit of the underlying claims, a *Rhines* movant need only show that they are non-frivolous. *See*, *e.g.*, *Canales v. Quarterman*, No. 2:03-cv-069, 2007 WL 922150, at *3 (E.D. Tex. Mar. 23, 2007) (making determinations "from the face" of petition); *Murphy v. Thaler*, No. 3:10-CV-163, 2010 WL 2381500, at *3 (N.D. Tex. June 8, 2010) (claims not plainly meritless because "allegations, if true, could form the basis for habeas corpus relief"); *cf.* R. Gov'g § 2254 Proc. U.S. Dist. Cts. 4, advisory committee note (noting that purpose of "plainly meritless" review is to "screen out frivolous applications"). The Unexhausted Claims are not frivolous for the reasons set forth in the Amended Petition and the Reply, the pertinent sections of which are incorporated by this reference as if fully set forth herein.

### B. There is a nontrivial chance that the TCCA would authorize litigation.

With respect to the availability of a state remedy, Rubio need only show that there is a nontrivial chance that the TCCA would authorize a subsequent state application. *See Neville*, 423 F.3d at 480. In order to facilitate litigation of newly discovered clams in subsequent applications, Texas Code of Criminal Procedure Article 11.071 § 5 provides:

> (a) If a subsequent application for a writ of habeas corpus is filed after filing an initial application, a court may not consider the merits of or grant relief based on the subsequent application unless the application contains sufficient specific facts establishing that: (1) the current claims and issues have not been and could not have been presented previously in a timely initial application or in a previously considered application filed under this article or Article 11.07 because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application.

Article 11.071 § 5(e) explains that "a factual basis of a claim is unavailable on or before a date described by Subsection (a)(1) if the factual basis was not ascertainable through the exercise of reasonable diligence on or before that date." In short, to satisfy *Rhines*, Rubio must show that there is a nontrivial chance that the "factual basis was not ascertainable through the exercise of reasonable diligence" on or before October 11, 2013, or provide another non-trivial argument for why Article 11.071 § 5 does not restrict subsequent state litigation.

### 1. There is a nontrivial chance the TCCA would authorize litigation of IATC claims 1, 3, 7, and 10.

Claims 1, 3, 7, and 10 are IATC claims, and there is a nontrivial chance that the TCCA would, with respect to those claims, authorize subsequent state litigation. In *Ex parte Graves*, the TCCA held that it would not authorize subsequent litigation in a case where the performance of state habeas counsel was objectively deficient. 70 S.W.3d 103, 104–05 (Tex. Crim. App. 2002). Specifically, when faced with an allegation that state habeas counsel's ineffectiveness *did double duty* as (1) the underlying constitutional claim, and (2) the showing necessary to satisfy Article 11.071, § 5(a), the TCCA held: "Because we find that competency of prior habeas counsel is not a cognizable issue on habeas corpus review, applicant's allegation cannot fulfill the requirements of article 11.071 section 5 for a subsequent writ." *Id.* at 105.

The TCCA and its members have since questioned whether *Graves* should apply in cases (like this one) where the allegation of state habeas counsel's

ineffectiveness *does not do double duty* as the underlying allegation of wrongful custody. *See, e.g., Ex parte Ruiz*, 543 S.W.3d 805, 826–32 (Tex. Crim. App. 2016) (across different opinions, all members of the court suggesting that there was "good cause" to revisit *Graves*);[4] *Ex parte Alvarez*, 468 S.W.3d 543, 545 (Tex. Crim. App. 2015) (Yeary, Johnson, and Newell, JJ., concurring) ("[R]ecent developments in federal habeas procedure, as well as, to a certain extent, the rationale underlying those new developments, counsel that the Court should revisit the holdings of *Graves*" in an appropriate case). There is a nontrivial chance that, in cases where the deficient performance of state habeas counsel explains the failure to include a *distinct* Sixth Amendment IATC allegation in the initial application, the TCCA may authorize subsequent litigation under § 5.

Since *Graves* was decided, the rationale for applying it to cases like Rubio's has collapsed. More specifically, gone are the policy and decisional predicates for refusing authorization when the ineffectiveness of state post-conviction counsel is merely asserted as the basis for permitting consideration of *a distinct IATC claim*.

For states like Texas, where challenging the effectiveness of trial counsel on direct appeal is formally or functionally foreclosed, there is now near-universal

---

[4] *See Ex parte Ruiz*, 543 S.W.3d 805, 827 (Tex. Crim. App. 2016) (Richardson, J., joined by Keller, P.J., and Meyers, Johnson, Keasler, and Newell, JJ.) (noting "good cause" to consider application of *Graves* in such cases); *id.* at 827 (Johnson, J., concurring) ("we should revisit *Ex parte Graves*" in the appropriate case); *id.* at 831 (Alcala, J., dissenting) (arguing that a death-sentenced prisoner is entitled to merits review when "he received incompetent representation during the initial state habeas proceeding, and when that incompetent representation has resulted in the forfeiture of one or more substantial claims for relief").

recognition that state post-conviction proceedings are the most crucial forum for enforcing the Sixth Amendment right. Indeed, even though the trial is the "main event" in the sense that it is the primary forum for determining guilt and innocence, enforcing the "bedrock" Sixth Amendment right on direct appeal is practically impossible. *See Trevino*, 569 U.S. at 422, 428; *see also Ex parte Torres*, 943 S.W.2d 469, 475 (Tex. Crim. App. 1997) (listing a number of reasons why the Sixth Amendment right to counsel cannot meaningfully be enforced on direct review). These enforcement needs mean that state collateral review is the "one and only opportunity" to raise claims of trial counsel's ineffectiveness in state court in Texas capital cases. *Ex parte Buck*, 418 S.W.3d 98, 109 (Tex. Crim. App. 2013) (Alcala, J., dissenting). Competent state post-conviction counsel are indispensable to investigating and presenting these trial counsel ineffectiveness claims. *See Alvarez*, 468 S.W.3d at 547 (Yeary, J., concurring).

The Texas rule that the ineffectiveness of state post-conviction counsel cannot permit a prisoner to bypass Article 11.071 § 5 is also predicated on federal rules that no longer exist. *Graves*, for example, relied heavily on *Coleman v. Thompson*, 501 U.S. 722 (1991), for the proposition that deficient post-conviction attorney performance could not excuse forfeiture—because forfeiture could be excused only if there existed a constitutional right to state post-conviction counsel. *See* 70 S.W.3d at 110, 111 n.30; *see also Ruiz*, 543 S.W.3d at 826 n.78 (citing *Graves* citing *Coleman*). In 2012, however, the Supreme Court invalidated that reading of *Coleman*. In recognition that "[t]he right to the effective assistance of counsel at trial is a bedrock principle in our

11

justice system," the Court held that inadequate state post-conviction performance could excuse forfeiture of an IATC claim. *Martinez*, 566 U.S. at 9, 12. In *Trevino*, the U.S. Supreme Court expressly held that *Martinez* applied in favor of Texas prisoners. *See* 569 U.S. at 428–29. In other words, *Martinez* and *Trevino* are sweeping changes that extinguish a basic rationale for an expansive reading of *Graves*.

The State of Texas has itself taken a position critical of *Graves* in other litigation. In *Trevino*, the Director argued that, if forfeited IATC claims could be subject to merits litigation in federal court, there should be a corresponding change to facilitate prior merits review in state court—a step that requires the TCCA to reject a broad application of *Graves*. Specifically, in *Trevino* the State of Texas "submit[ted] that its courts should be permitted, in the first instance, to decide the merits of Trevino's ineffective-assistance-of-trial-counsel claim." 569 U.S. at 429 (citing Brief for Respondent 58–60); *see also* Brief for the Respondent at 58–59, *Trevino v. Thaler*, 569 U.S. 413 (2013) (No. 11-10189) ("If this Court changes the [rule against excusing forfeiting IAC claims] now, equity demands at a minimum that the CCA have an opportunity to reevaluate its procedural ruling and adjudicate Trevino's [IAC] claim on the merits.").

A TCCA decision rejecting a broad reading of *Graves*—that is, refusing to apply it in scenarios where the deficiency of post-conviction counsel is simply asserted as the basis for excusing forfeiture of a distinct claim—is doctrinally quite minor. There are four ways for the TCCA to implement a Texas rule that mimics *Martinez* and *Trevino*. First, it might recognize that the nominally subsequent application is

effectively the first application because initial state post-conviction counsel did not file a proper application. *See Alvarez*, 468 S.W.3d at 550–51 (citing and expanding on logic from *Ex parte Medina*, 361 S.W.3d 633, 641 (Tex. Crim. App. 2011)).

Second, the TCCA might recognize that the denial of effective state post-conviction counsel, in a jurisdiction that provides a statutory guarantee to competent capital state post-conviction representation, violates due process. This position is the one taken by Judges Yeary, Johnson, and Newell in *Alvarez*:

> [T]here is an unequivocal and absolute statutory right to counsel (indeed, "competent counsel") for death row inmates in Texas under Article 11.071. The right to effective assistance of appellate counsel that *Evitts v. Lucey* recognized was a function of the due process "entitlement doctrine" . . . . Texas is not required by the federal constitution to provide post-conviction habeas corpus proceedings; nor is it required to provide counsel for those inmates who wish to take advantage of the post-conviction habeas corpus proceedings that Texas in fact provides. . . . But in the context of capital cases, Texas has chosen unequivocally to provide both. Having provided those absolute rights, albeit by state law, it may not arbitrarily take them away without impinging on the applicant's due process rights. That is the essence of the Supreme Court's entitlement doctrine. *Evitts v. Lucey*, 469 U.S. at 400–01. It is arguable that the statutory right to counsel to which Article 11.071, Section 2(a), entitles Applicant would be taken from him arbitrarily, in violation of due process, if it does not embrace the right to effective counsel—at least for those claims that can be raised only for the first time in post-conviction proceedings. After all, as *Martinez* now establishes, in that context the need for effective counsel is as great as the need for effective counsel on direct appeal.

468 S.W.3d at 547–48 (Yeary, J., concurring) (footnote and citations omitted).

Third, the TCCA could recognize that IATC claims are not "available" at the time of the first post-conviction application, within the meaning of art. 11.071 § 5(a)(1), when counsel filing the application performs deficiently. The factual basis for a claim is "unavailable" if it "was not ascertainable through the exercise of

reasonable diligence" on or before the date the initial or a previously considered application was filed. Tex. Code Crim. Proc. art. 11.071, § 5(e). A colorable claim of ineffective assistance of original habeas counsel, raised in a subsequent application, should rightfully be recognized as newly available for purposes of § 5(a)(1) and (e). *See Graves*, 70 S.W.2d at 121 (Price, J., dissenting) (the legislature did say that it intended "ineffective assistance of writ counsel to be an exception to the section five bar on subsequent applications," in the language of sections 5(a)(1) and (e)); *see also Ex parte Foster*, No. WR-65,799-02, 2010 WL 5600129, at *2 (Tex. Crim. App. Dec. 30, 2010) (Price, J., dissenting) (suggesting the court examine the issue directly).

Indeed, for an IATC claim to be "available"—meaning that prisoners can avail themselves of the protections for the right to adequate assistance of trial counsel—there is a "need for a new lawyer," a "need to expand the trial court record," and a "need . . . to develop the claim." *Trevino*, 569 U.S. at 428. If state habeas counsel (presumably a "new lawyer") is ineffective in satisfying the latter two necessities—as to an IATC claim—then the claim is simply not available for the applicant at the time the application is filed. An incarcerated death row prisoner lacking adequate representation simply cannot, through the exercise of reasonable diligence, expand the trial court record or meaningfully develop the claim. *See Martinez*, 566 U.S. at 12 ("While confined to prison, the prisoner is in no position to develop the evidentiary basis for a claim of ineffective assistance, which often turns on evidence outside the trial record.").

14

Fourth, the TCCA could simply revisit the definition of "competent counsel" used in Tex. Code Crim. Proc. art. 11.071. A death-sentenced prisoner in Texas is dependent upon "competent counsel" to "investigate expeditiously . . . the factual and legal grounds" for filing a habeas application. Tex. Code Crim. Proc. art. 11.071 §§ (2)(a), 3(a). In *Graves*, the TCCA held state post-conviction counsel's competency "only concerns habeas counsel's qualifications, experience, and abilities at the time of his appointment." *Id.* at 114. By limiting the definition of competent counsel to appointment, *Graves* unreasonably precluded applicants from challenging the incompetence of counsel's performance during representation. *See Alvarez*, 468 S.W.3d at 548–49 (Yeary, J., concurring) ("Article 11.071 as a whole contemplates more than just the appointment of an attorney who is capable of providing competent representation if he chooses to do so. If it did not, then the statutory right to counsel would be no less of a 'futile gesture' than a constitutional right to counsel that does not 'comprehend[] the right to effective assistance of counsel.'") (quoting *Evitts v. Lucey*, 469 U.S. 387, 397 (1985))); *Graves*, 70 S.W.3d at 121 (Price, J., dissenting) ("The appointment of counsel is meaningless without the requirement that counsel be competent."); *id.* at 130 (Holcomb, J., dissenting) ("The only sensible interpretation of 'competent counsel' is the traditional one: counsel reasonably likely to render, and rendering, effective assistance.").

Because there is a nontrivial chance that the TCCA would authorize subsequent litigation over an IATC claim where original state habeas counsel was deficient, all that Rubio need demonstrate is a nontrivial chance that he could show

15

such deficiency. For the reasons set forth in the Amended Petition (ECF Doc. 24 at 65–68, 116, 157, and 172–73) and Reply (ECF Doc. 41 at 36–38, 89–90, 138–40, 148–50), which are hereby incorporated by reference, Rubio has cleared that exceedingly low bar.

### 2. There is a nontrivial chance the TCCA would authorize litigation of non-IATC claims 4, 5, 6, 8, and 9.

Claims 4, 5, 6, 8, and 9 are non-IATC claims, and there is a nontrivial chance that the TCCA would, with respect to those claims, authorize subsequent state litigation—for two reasons. First, the arguments as to why procedural default would be excused in federal court set forth in the Amended Petition (ECF Doc. 24 at 129, 137–41, 151, 165–66, 170) and in the Reply (ECF Doc. 41 at 104–06, 122–23, 130–31, 143–44, 146–46), also show that there is a nontrivial chance that the TCCA would find, under Article 11.071 § 5(a)(1), that these claims were not "available" on the date that the initial state post-conviction application was filed in this case. Second, there is a nontrivial chance that, for the same reasons that the TCCA could reject a broad reading of *Graves* and recognize that ineffective state post-conviction representation excuses forfeiture of IATC claims, it would recognize that ineffective state post-conviction representation might excuse forfeiture of *other* types of claims that cannot be litigated at trial or direct appeal.

### III. There is no indication that Rubio has abusively and intentionally engaged in delay.

Rubio has not engaged in "intentionally dilatory litigation tactics" that would prevent this Court from granting his motion to stay proceedings. Courts have been

reluctant to grant *Rhines* stays because of such tactics—for example, when a state prisoner waited to request a *Rhines* stay until after the district court denied the habeas petition. There is not a whiff of intentional delay in this case. In contrast to other cases where courts have found intentional delay, Rubio is seeking *Rhines* relief at his very first opportunity in federal court. Until Rubio had filed his Petition, there was not any proceeding to stay and hold in abeyance. He has not delayed his request until some advanced phase of this proceeding; it comes at the same time he files his Reply, and in response to the Director's assertion that the claims should be denied because they are exhausted and procedurally defaulted. *Rhines* permits this Court to hold these proceedings in abeyance to permit appropriate consideration of claims that are unexhausted (and therefore not defaulted).

## CONCLUSION

Rubio respectfully requests this Court enter an order staying his federal habeas corpus proceeding and holding it in abeyance to file an application for writ of habeas corpus in state court, which undersigned counsel will file if this Motion is granted. To the extent the Director disputes the factual averments set forth in this Motion, Rubio requests an evidentiary hearing, and to the extent this Court considers it helpful in making its determination, Rubio requests an oral argument.

Respectfully Submitted,

DATE: November 16, 2020

*/s/ Lee Kovarsky*
Lee B. Kovarsky
*Principal*
Texas Bar No. 24053310
727 East Dean Keeton St, Jon 6.222
Austin, TX 78705
434-466-8257 (tel.)
l.kovarsky@phillipsblack.org

*/s/ Kristin Swain*
Kristin Swain
*Associate*
Phillips Black, Inc.
PO Box 8745
Saint Louis, MO 63101
(888) 532-0897
k.swain@phillipsblack.org

JASON D. HAWKINS
Federal Public Defender

JEREMY SCHEPERS
Supervisor, Capital Habeas Unit

*/s/ Jessica Graf*
Jessica Graf (TX 24080615)

*/s/ Derek VerHagen*
Derek VerHagen (TX 24090535)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jessica_graf@fd.org
derek_verhagen@fd.org

*Counsel for Petitioner*

18

## CERTIFICATE OF CONFERENCE

On November 16, 2020, undersigned counsel for Rubio conferred with counsel for the Director, Assistant Attorney General Garrett Greene, in an effort to resolve this matter by agreement. The Director's counsel advised that he is opposed to this Motion.

/s/ Jessica Graf
Jessica Graf

## CERTIFICATE OF SERVICE

On November 16, 2020, a copy of the foregoing motion was served upon Garrett

Greene, Assistant Attorney General, via the CM/ECF system.

/s/ Jessica Graf
Jessica Graf
