IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

---

**JOHN ALLEN RUBIO,**
    Petitioner,

*v.*

**BOBBY LUMPKIN, Director,**
Texas Department of
Criminal Justice,
Correctional Institutions Division,
    Respondent.

Case No. 1:18-CV-00088

District Judge Rolando Olvera

---

**REPLY IN SUPPORT OF
MOTION FOR DISCOVERY**

---

Lee B. Kovarsky
*Principal*
Phillips Black, Inc.
Texas Bar No. 24053310
727 East Dean Keeton St, Jon 6.222
Austin, TX 78705
434-466-8257 (tel.)
l.kovarsky@phillipsblack.org

Kristin Swain
*Associate*
Phillips Black, Inc.
PO Box 8745
Saint Louis, MO 63101
(888) 532-0897
k.swain@phillipsblack.org

JASON D. HAWKINS
Federal Public Defender

JEREMY SCHEPERS
Supervisor, Capital Habeas Unit

Jessica Graf (TX 24080615)
Derek VerHagen (TX 24090535)
Assistant Federal Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746 (phone) 214-767-2886 (fax)
jessica_graf@fd.org
derek_verhagen@fd.org

**THIS IS A CAPITAL CASE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

ARGUMENT ................................................................................................................. 1

    I.    Rubio has demonstrated good cause for discovery ................................. 1

    II.    The Director's procedural defenses do not preclude discovery ............... 3

    III.    Rubio is entitled to his requested discovery ............................................ 6

        A.    Discovery is necessary to establish Rubio's Ineffective Assistance of Trial Counsel and False Testimony claims arising from Dr. Michael Welner's trial testimony (Claims 3, 6, and 7) .................. 6

        B.    Discovery is necessary to establish Rubio's State Misconduct claims (Claims 4 and 5). ............................................................. 8

        C.    Discovery is necessary to establish Rubio's False Testimony and *Brady* claims arising from A.P. Merillat's trial testimony (Claims 8 and 9) ............................................................................. 12

    IV.    This Court may order discovery without third-party responses .......... 12

CONCLUSION AND PRAYER FOR RELIEF ................................................... 14

CERTIFICATE OF SERVICE ................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barrientes v. Johnson,*
   221 F.3d 741 (5th Cir. 2000) .................................................................................. 4

*Bracy v. Gramley,*
   520 U.S. 899 (1997) ....................................................................................... *passim*

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 322 (1986) .......................................................................................... 3

*Fierro v. Johnson,*
   197 F.3d 147 (5th Cir. 1999) .................................................................................. 13

*Green v. Davis,*
   No. 4:13-cv-1899 (S.D. Tex. April 11, 2018) ........................................................... 4

*Harris v. Nelson,*
   394 U.S. 286, 299 (1969) ......................................................................................... 1

*Henry v. Warden,*
   750 F.3d 1226 (11th Cir. 2014) ............................................................................... 3

*Holloway v. Horn,*
   355 F.3d 707 (3d Cir. 2004) .................................................................................... 3

*Martinez v. Ryan,*
   566 U.S. 1 (2012) ..................................................................................................... 5

*Prible v. Thaler,*
   4:09-cv-01896 (S.D. Tex. Dec. 5, 2016) ................................................................. 13

*Prible v. Thaler,*
   No. 4:09-cv-01896 (S.D. Tex. Nov. 19, 2013) .................................................. 4, 13

*Royal v. Taylor,*
   188 F.3d 239 (4th Cir. 1999) .................................................................................. 4

*Rucker v. Norris,*
   563 F.3d 766 (8th Cir. 2009) .................................................................................. 4

*Saldano v. Roach,*
   363 F.3d 545 (5th Cir. 2004) ................................................................................ 12

*Sierra Club v. City of San Antonio*,
    115 F.3d 311 (5th Cir.1997) .................................................................. 12

*United States v. Jones*,
    172 F.3d 381 (5th Cir. 1999) ................................................................... 3

*Washington v. Davis*,
    715 F. App'x 380 (5th Cir. 2017) ............................................................. 5

*Washington v. Davis*,
    No. 4:07-cv-721 (S.D. Tex. June 7, 2019) ............................................ 5, 7

*Washington v. Johnson*,
    No. 4:99-cv-140 (S.D. Tex. March 31, 2000) ........................................ 13

*Williams v. Bagley*,
    380 F.3d 932 (6th Cir. 2004) ................................................................... 4

**Statutes**

28 U.S.C. § 2254(d) ........................................................................................ 3

28 U.S.C. § 2254(e)(2) .................................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 45(d)(3) ................................................................................. 13

# ARGUMENT

Petitioner John Allen Rubio has filed his Amended Petition in support of a writ of habeas corpus (ECF No. 24) and a corresponding motion asking this Court to grant discovery (ECF No. 28). The Director opposes discovery primarily on the grounds that Rubio's claims are meritless and procedurally barred. ECF No. 31. The Director's opposition is premised on numerous misstatements of law, many of which Rubio has answered in his Reply in Support of his Amended Petition, filed simultaneously with this document. ECF Doc. 41.[1] None of the Director's arguments preclude discovery. Because Rubio has demonstrated good cause for his requests, this Court should grant his discovery motion.

## I. Rubio has demonstrated good cause for discovery.

Rubio has shown good cause by pleading specific allegations that "show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is … entitled to relief …." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)). In his Amended Petition, Rubio identified, as the Director demands, the elements of each of his claims and made "particularized and specific, rather than conclusory or speculative" allegations. *See* ECF No. 31 at 3; ECF Doc. 24. And in his Motion for Discovery, Rubio specifically identified documents and depositions needed to prove his claims. ECF Doc. 28. He has met the standard for discovery set out in Habeas Rule 6.

---

[1] Citations to other pleadings filed in this case will be styled as "ECF Doc. [#] at [page #]." The page number cited will be the ECF page number listed at the top right corner of the document.

A word about the relationship between the Director's discovery and summary judgment motions is in order. As explained in Rubio's Reply in Support of his Amended Petition, summary judgment may only be entered "after adequate time for discovery." *See* ECF Doc. 41 at 18 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In other words, summary judgment is awarded when it becomes clear that, even after factual development, the non-movant would lose in front of any reasonable jury. The Director nonetheless asks this Court to grant summary judgment *before* discovery, arguing that there are no genuine issues of material fact. ECF Doc. 30 at 33–34. But the Director's arguments against relief on the merits involve detailed fact disputes for which discovery is essential. *See, e.g.,* ECF Doc. 41 at 16–18; 80–81 (noting the Director disputes whether trial counsel had a strategic reason for failing to present Rubio's TDCJ mental health records); 95–101 (whether the CCDA's office blacklisted defense attorneys, interfered with Rubio's defense funding, and abused its subpoena power); 111–13 (whether Villalobos dishonestly told the trial court he sought death against Rubio in good faith); 126–27 (whether Rubio was unmedicated for the majority of his pretrial incarceration). The Director cannot simultaneously urge summary judgment, contest material facts, and oppose factual development. This Court should authorize discovery before ruling on the summary judgment motion.

**II. The Director's procedural defenses do not preclude discovery.**

The Director contests good cause on the grounds that Rubio's claims must be declared unexhausted or procedurally defaulted,[2] and erroneously contends that unexhausted or procedurally defaulted claims never warrant discovery. ECF Doc. 31 at 4–5. The problem here is that the discovery is necessary to determine, among other things, whether any procedural defects with the claims are excused.

The Director's unsupported suggestion that all factual development is precluded when a claim is unexhausted or defaulted contravenes Supreme Court precedent, which only requires Rubio to raise "specific allegations" that he *may* be entitled to relief "if the facts are fully developed." *Bracy*, 520 U.S. at 908–09. In habeas proceedings, discovery is therefore appropriate in order to determine the validity of procedural defenses. *See United States v. Jones*, 172 F.3d 381, 385 (5th Cir. 1999) (remanding for evidentiary hearing to permit presentation of evidence to overcome procedural default); *see also Henry v. Warden*, 750 F.3d 1226, 1231–32 (11th Cir. 2014) (holding evidentiary hearing permissible on the federal question of cause and prejudice to excuse procedural default); *Holloway v. Horn*, 355 F.3d 707, 716 (3d Cir. 2004) (holding "it is within a district court's authority to grant a hearing on a petitioner's ability to establish cause to excuse a procedural default").

---

[2] As explained in the Reply, ECF Doc. 41 at 36–37 n.8, the Director refers to the claims as unexhausted *and* defaulted, rather than unexhausted *or* defaulted. But claims that are unexhausted are claims for which a state remedy remains, and they are therefore not defaulted. A claim not decided on the merits in state court is defaulted when such merits consideration cannot take place—either because a state court *did* rule against it on adequate and independent state grounds or if a state court *would* certainly do so. In either of those two scenarios, however, the claim is exhausted.

Rubio has identified a path for merits relief on each of his claims, and most of those paths include excuses for procedural default. *See* ECF Doc. 24; ECF Doc. 41. Indeed, Rubio asks for discovery so that this Court may ultimately reach the merits of his claims—but also to resolve the procedural defenses the Director asserts bar such consideration. Specifically, he asks for discovery (1) to exhaust most of his claims, (2) to develop evidence supporting excuses for any claims found to have been defaulted, (3) to support relief on the merits if such default is excused, and (4) to support relief on the merits if he avoids the relitigation bar in 28 U.S.C. § 2254(d). This is not a case where relief on the merits is wholly foreclosed and discovery is pointless. Here, discovery is necessary to resolve procedural defenses and to resolve the underlying merits.³

The Director further argues that 28 U.S.C. § 2254(e)(2) bars new evidence because Rubio failed to diligently develop the factual basis of his claims in state court. ECF No. 31 at 5–6. This argument is meritless. As the contemporaneously filed Reply explains in great detail, a petitioner does not "fail to develop" the factual basis of a claim where there is cause for failing to raise the claim itself. *See Barrientes v.*

---

³ The cases the Director cites for his position that discovery is foreclosed when the underlying claim is procedurally defaulted do not apply here. In *Rucker v. Norris*, 563 F.3d 766, 771 (8th Cir. 2009), discovery was denied as the underlying claim was "procedurally barred because Rucker raised no issue of federal constitutional law and cited no federal authority in the state courts." In *Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004), the Sixth Circuit affirmed the denial of discovery on a pre-*Martinez* ineffective assistance of counsel claim when the claim was procedurally defaulted and the request resembled a classic "fishing expedition." The court in *Royal v. Taylor*, 188 F.3d 239, 249 (4th Cir. 1999), affirmed the denial of discovery when the petitioner failed to show "cause and prejudice or a fundamental miscarriage of justice permitting [the claim's] consideration on federal habeas."

4

*Johnson*, 221 F.3d 741, 771 (5th Cir. 2000); *see also* ECF Doc. 41 at 38–48. Thus, federal courts have granted fact development to petitioners similarly situated to Rubio. *See, e.g., Prible v. Thaler*, No. 4:09-cv-01896 (S.D. Tex. Nov. 19, 2013) (ECF No. 69) (granting discovery on claim dismissed by the TCCA as abuse of the writ); *Green v. Davis*, No. 4:13-cv-1899 (S.D. Tex. April 11, 2018) (ECF No. 101) (granting discovery on procedurally defaulted claims).

The Director's argument—that Rubio conceded failure within the meaning of 28 U.S.C. § 2254(e)(2) when he alleged that his state habeas counsel was ineffective—is equally erroneous. *See* ECF No. 31 at 6. A petitioner who lacked adequate state habeas representation is not "at fault" for a forfeited IATC claim. *See Martinez v. Ryan*, 566 U.S. 1, 13 (2012); *see also* ECF Doc. 41 at 38–48. This Court may permit evidentiary development specifically to allow Rubio to show cause to excuse procedural default of his IATC claims. *See, e.g., Washington v. Davis*, 715 F. App'x 380, 386 (5th Cir. 2017) ("The evidence sought by Washington … is central to his attempt to overcome the procedural default in light of *Trevino*."); *Washington v. Davis*, No. 4:07-cv-721 (S.D. Tex. June 7, 2019) (ECF No. 192) (granting discovery relevant to overcoming procedural default and underlying merits of claim).

Rubio will not repeat his arguments to excuse procedural default on each of his claims here. *See* ECF Doc. 24; ECF Doc. 41. But because Rubio has established a nontrivial possibility that he may overcome procedural default on his claims, and because he has alleged specific facts which, if true, entitle him to relief, he meets the good cause standard. The Director's procedural arguments to the contrary are

5

unavailing, and the Director cannot short-circuit discovery by asking the Court to resolve all factual disagreements in his favor.

## III. Rubio is entitled to his requested discovery.

The Director's claim-specific arguments opposing discovery are largely redundant of the arguments raised in his Motion for Summary Judgment. He submits that Rubio's claims are factually meritless and that the discovery requests will not assist in proving them. ECF Doc. 31 at 6–7. But, if anything, the Director's opposition to discovery highlights the specific factual disputes that warrant further evidentiary development. As with the discovery pertinent to the procedural defenses, this Court cannot draw inferences about contested facts in the Director's favor when deciding the discovery motion. The fact development must happen first.

### A. Discovery is necessary to establish Rubio's Ineffective Assistance of Trial Counsel and False Testimony claims arising from Dr. Michael Welner's trial testimony (Claims 3, 6, and 7).

Rubio has requested discovery necessary to establish his IATC and False Testimony claims stemming from Dr. Michael Welner's trial testimony. *See* ECF Doc. 28 at 7–10. Rubio requests Rule 45 subpoenas for communications between the Cameron County District Attorney's Office (CCDA) and trial counsel—communications regarding Dr. Welner's testimony, trial counsel's billing records, and the documents Dr. Welner relied on to prepare. *See id.* The Director did not respond to Rubio's specific requests but instead argues that Rubio "fails to show that Dr. Welner's testimony was false, or that it was material." ECF Doc. 31 at 7. Rubio answers this argument in his Reply. ECF Doc. 41 at 124–30. Dr. Welner falsely

6

testified about Rubio's steady state of mental health and the degree to which he was medicated between his first and second trials. *Id.*

The discovery Rubio requests will allow him to prove the merits of Claims 3 and 7 by demonstrating that counsel were ineffective. Documentation establishing that the State gave the defense the records at issue will show that trial counsel knew or should have known Dr. Welner's testimony was false. ECF Doc. 28 at 7. The request for communications between the CCDA's Office and trial counsel, and for trial counsel's billing records, likewise will establish whether the State provided, and counsel reviewed, the documents Dr. Welner received in preparation for his testimony. *Id.* at 8. If counsel were informed but failed to review the records or use them to cross-examine Dr. Welner, counsel were ineffective.

The Director submits that Rubio "does not deserve a second bite at the apple," by which he means that the argument could have been raised in state habeas because trial counsel received a copy of Dr. Welner's report. ECF Doc. 31 at 8. With regard to the IATC claims, the Director overlooks that this is precisely Rubio's argument—counsel knew or should have known the testimony was false and Rubio seeks documentation to prove counsel's failures. ECF Doc. 24 at 90–93. That the report was available to trial counsel is but more evidence that state habeas counsel was likewise ineffective for failing to raise the claim in state court—a critical element of Rubio's argument establishing cause to overcome procedural default. *Id.* at 103; ECF Doc. 41 at 89–90.

7

The discovery requests will likewise permit Rubio to prove the merits of Claim 6 by demonstrating that the State knowingly sponsored false testimony. Documentation establishing that the State provided Dr. Welner with Rubio's TDCJ records will demonstrate that the State knew or should have known that Dr. Welner's testimony was false. *Id.* at 8. And because Dr. Welner clearly provided false testimony based on records he was given, Rubio requests all of Dr. Welner's interview notes and underlying documentation in order to determine the extent of Dr. Welner's false testimony. *Id.* at 9–10.

### B. Discovery is necessary to establish Rubio's State Misconduct claims (Claims 4 and 5).

Discovery is necessary to establish that the State violated Rubio's rights to due process and equal protection by engaging in a pattern of abusive prosecutorial tactics and seeking death against him in bad faith. *See* ECF Doc. 24 at 116–140. To prove his claims, Rubio requests to depose former CCDA Armando Villalobos and former First Assistant Charles Mattingly. ECF Doc. 28 at 11–15. He further requests Rule 45 subpoenas for documents to prove that Villalobos used a community survey to determine that seeking death against Rubio was politically expedient, and that the State used Villalobos's illegal civil asset forfeiture money to fund Rubio's prosecution, intentionally interfered with defense funding at trial, and knowingly abused its subpoena power. *Id.*

The Director claims that no discovery related to Villalobos's misconduct is warranted because this Court should rely on the statements Villalobos gave pretrial—statements given before Villalobos's schemes were publicly known—and

8

find that his motivation for seeking death against Rubio was not in bad faith. ECF Doc. 31 at 10. The requested deposition of Villalobos will permit Rubio to question the former CCDA about his tactics based on information, revealed long *after* the trial, about Villalobos's crimes. Similarly, while the Director claims that Rubio's allegations of a pattern of state misconduct were properly "vetted" by the trial court, *id.* at 10, neither the trial judge nor defense counsel were aware of the CCDA's egregious misconduct at the time. The requested deposition of Mattingly and the subpoenas for documents are necessary for Rubio to establish that the State knowingly engaged in a pattern of misconduct during and directly related to Rubio's trial.[4]

The Director also disputes that Rubio's request for documentation related to the community survey is necessary because Villalobos gave a valid reason to seek death against Rubio at a pretrial hearing. *Id.* at 9. But Rubio's request is specifically tailored to prove his allegations and establish cause for procedural default. Villalobos hid that he conducted a survey for Rubio's case until after Rubio's state habeas application was filed; therefore, this evidence is critical for Rubio to meet his burden of proof on some of the procedural questions the Court will have to resolve before deciding the merits. ECF Doc. 41 at 104–06, 122–23. Similarly, the State failed to disclose that it used dirty money from Villalobos's civil asset forfeiture fund to pay

---

[4] The Director also reiterates his argument raised in his Motion for Summary Judgment that, even if the State engaged in egregious misconduct directly related to Rubio's trial, it was harmless due to the nature of Rubio's crime. Rubio thoroughly rebutted this argument in his Reply. ECF Doc. 41 at 18–23.

9

for Rubio's prosecution. *Id.* Rubio requests documentation to prove this allegation—evidence critical both to establish that his trial was fundamentally unfair and to overcome procedural default.

Finally, the Director argues that this Court should not permit Rubio to depose Villalobos or Mattingly because "any allegation that Villalobos's criminal conduct permeated Rubio's trial is speculative and thus fails to qualify for discovery." ECF Doc. 31 at 11. The Director points to *Bracy*, noting that the Supreme Court held discovery was warranted when the petitioner supported "his discovery request by pointing not only to [the judge's] conviction for bribe taking in other cases, but also to additional evidence … that lends support to his claim that [the judge] was actually biased in *petitioner's own case.*" *Id.* at 11–12 (quoting *Bracy*, 520 U.S. at 909 (emphasis in original)). In fact, *Bracy* strongly supports Rubio's discovery requests.

In *Bracy*, the petitioner sought discovery to prove that a judge who was convicted of taking bribes in other cases was biased against the petitioner, and that the judge treated the petitioner harshly in order "to avoid being seen as uniformly and suspiciously 'soft' on criminal defendants." 520 U.S. at 905. The lower courts had found Bracy's argument speculative because "even if petitioner were to uncover evidence that [the judge] sometimes came down hard on defendants who did not bribe him, it would not show that he followed the practice *in this case.*" *Id.* at 903 (internal quotation omitted). Even so, the Supreme Court reversed—holding that Bracy had shown good cause even though his claim of judicial bias was "quite speculative" and difficult to prove because he had some evidence suggesting the judge's bias *could have*

affected his case. *Id.* at 905, 909. For instance, Bracy was able to show that his trial attorney was a former associate of the judge and that a different former associate was corrupt and involved in the judge's bribery. *Id.* at 908–09. Thus, Bracy submitted that his counsel might have taken his case with the understanding that counsel would not provide a zealous defense to hide the judge's bribe negotiations in another murder case tried shortly thereafter. *Id.* at 908. While the Court acknowledged Bracy's argument was "only a theory at this point" and "not supported by any solid evidence of petitioner's trial lawyer's participation in any such plan[,]" it held that Bracy had nonetheless established good cause for discovery. *Id.*

Similarly, Rubio has pointed to evidence suggesting that Villalobos's misconduct impacted Rubio's trial and requests discovery to prove it. For instance, Villalobos conducted a community survey only for Rubio's case, and he did so only after he received negative publicity on a case for which he had accepted a bribe. ECF Doc. 24 at 136. Villalobos used illegal civil asset forfeiture money to fund Rubio's prosecution and vehemently opposed litigation that would shed light on the CCDA Office's funding. *Id.* at 120–22. And Villalobos specifically stated that he would use the veil of prosecutorial discretion to hide his crimes. *Id.* at 131. Thus, Rubio has pointed to evidence suggesting that Villalobos's broad bribery scheme tainted Rubio's case as well. As the Supreme Court did in *Bracy*, this Court should find that Rubio established good cause for discovery.

### C. Discovery is necessary to establish Rubio's False Testimony and *Brady* claims arising from A.P. Merillat's trial testimony (Claims 8 and 9).

Rubio seeks discovery necessary to prove that the State knew or should have known that Merillat provided false testimony and that the State withheld valuable impeachment evidence. Rubio requests a Rule 45 subpoena for communications between the CCDA's Office and Merillat related to Merillat's false testimony in the *Velez* case, and he requests to depose Armando Villalobos and Charles Mattingly to determine whether and when the State learned that Merillat gave false testimony in *Velez*. ECF Doc. 28 at 16–17. The Director submits that Rubio does not need to prove that the State knew Merillat gave false testimony or withheld evidence because the fact that Merillat had testified falsely more than once "would have been of marginal value to the defense." ECF Doc. 31 at 9. But the evidence related to Merillat's false testimony in *Velez* goes directly to his credibility as a witness—especially since the State highlighted to the jury that Merillat's false testimony in another case, *Estrada*, was a one-time event. *See* ECF Doc. 24 at 159–60. Rubio's discovery request is necessary to prove that the State, which sponsored Merillat's testimony in *Velez*, withheld the *Velez* impeachment evidence and knew Merillat testified falsely when he told Rubio's jury he had only previously provided false testimony in *Estrada*.

### IV. This Court may order discovery without third-party responses.

Finally, although the Director represents the State in Rubio's case, he posits that—before granting discovery—this Court must seek input from the parties that possess the documentation Rubio requests and from the individuals he seeks to

depose. ECF Doc. 31 at 11–12. But this Court need not require a response from third parties before authorizing subpoenas or depositions. The Director is the sole representative of the State. *See Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir.1997) ("Under Texas law, the Attorney General enjoys an exclusive right to represent state agencies; other attorneys who may be permitted to assist the Attorney General are subordinate to his authority."); *see also Saldano v. Roach*, 363 F.3d 545, 552 (5th Cir. 2004) (holding District Attorney could not intervene in federal capital habeas case even though the D.A. would be affected by the outcome because only the Attorney General may represent the State). Moreover, all third parties will have the opportunity to file any appropriate motions and assert relevant privileges after being served with a subpoena. *See* Fed. R. Civ. P. 45(d)(3); *see also Prible v. Thaler*, 4:09-cv-01896 (S.D. Tex. Dec. 5, 2016) (ECF Doc. 146) (district attorney requesting *in camera* review of documents in response to subpoena authorized by federal district court). And far more extensive discovery has been ordered in similar cases without input from third parties. *See, e.g. Prible v. Thaler*, No. 4:09-cv-01896 (S.D. Tex. Nov. 19, 2013) (ECF Doc. 69) (authorizing Prible to subpoena records from the Harris County District Attorney's Office, Harris County Sheriff's Department, United States Attorney's Office for the Southern District of Texas, Bureau of Prisons, and U.S. Marshal's Service).

Moreover, the Director's reliance on *Fierro v. Johnson*, 197 F.3d 147 (5th Cir. 1999), is misplaced. In *Fierro*, the Fifth Circuit held that the Director's attorneys did not have constructive knowledge of a police officer's false testimony given in state

13

court because the Director's counsel do not work with police to prosecute crimes. *Id.* at 155. *Fierro* did not involve a discovery request and does not stand for the proposition that federal courts must seek third-party input before ordering discovery. In fact, the Director has had no issue in complying with discovery orders without a third-party response in other capital cases. *See e.g. Washington v. Johnson*, No. 4:99-cv-140 (S.D. Tex. March 31, 2000) (ECF Doc. 64) (directing the Harris County Sheriff, the Attorney General, and the District Attorney's Office to supply discovery). This Court should likewise grant the requested discovery and resolve any assertions of privilege or confidentiality if raised.

## CONCLUSION AND PRAYER FOR RELIEF

For the reasons stated in Rubio's Motion for Discovery and in this Reply, Rubio respectfully requests this Court enter an order authorizing the requested discovery, and then stay these proceedings pending exhaustion.

Respectfully submitted,

DATE: November 16, 2020

*/s/ Lee Kovarsky*
Lee B. Kovarsky
*Principal*
Texas Bar No. 24053310
727 East Dean Keeton St, Jon 6.222
Austin, TX 78705
434-466-8257 (tel.)
l.kovarsky@phillipsblack.org

*/s/ Kristin Swain*
Kristin Swain
*Associate*
Phillips Black, Inc.
PO Box 8745
Saint Louis, MO 63101
(888) 532-0897
k.swain@phillipsblack.org

JASON D. HAWKINS
Federal Public Defender

JEREMY SCHEPERS
Supervisor, Capital Habeas Unit

*/s/ Jessica Graf*
Jessica Graf (TX 24080615)

*/s/ Derek VerHagen*
Derek VerHagen (TX 24090535)
Assistant Federal Public Defenders

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746
214-767-2886 (fax)
jessica_graf@fd.org
derek_verhagen@fd.org

*Counsel for Petitioner*

**CERTIFICATE OF SERVICE**

On November 16, 2020, a copy of the foregoing motion was served upon Garrett Greene, Assistant Attorney General, via the CM/ECF system.

/s/ Jessica Graf
Jessica Graf
