IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

**JOHN ALLEN RUBIO,**
 Petitioner,

Case No. 1:18-CV-00088

District Judge Rolando Olvera

*v.*

**BOBBY LUMPKIN, Director,**
Texas Department of
Criminal Justice,
Correctional Institutions Division,
 Respondent.

## RESPONSE TO RESPONDENT LUMPKIN'S MOTION TO RECUSE

Lee B. Kovarsky
*Principal*
Phillips Black, Inc.
Texas Bar No. 24053310
727 East Dean Keeton St, Jon 5.231
Austin, TX 78705
434-466-8257 (tel.)
l.kovarsky@phillipsblack.org

Kristin Swain
*Associate*
Phillips Black, Inc.
PO Box 8745
Saint Louis, MO 63101
(888) 532-0897
k.swain@phillipsblack.org

JASON D. HAWKINS
Federal Public Defender

JEREMY SCHEPERS
Supervisor, Capital Habeas Unit

Derek VerHagen (TX 24090535)
Assistant Federal Defender

Office of the Federal Public Defender
Northern District of Texas
525 S. Griffin St., Ste. 629
Dallas, TX 75202
214-767-2746 (phone) 214-767-2886 (fax)
derek_verhagen@fd.org

**THIS IS A CAPITAL CASE**

## INTRODUCTION

This Motion ("Recusal Motion") is not a high-minded gesture to impartial adjudication; it is an attempt to shop for a more receptive judge after Judge Rolando Olvera refused to declare Rubio's claims meritless. And it traffics in an unserious theory that a judicial determination adverse to *Rubio* in an earlier case creates an appearance of bias sufficient for the *Director* to move for recusal. There is no legally cognizable ground for recusal associated with Judge Olvera's judicial role in a collateral challenge to an earlier conviction. The Recusal Motion is also late. Fourteen months ago, *Rubio* might have had a nonfrivolous ground to seek recusal—but the *Director* did not, and he certainly lacks it now.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Rubio was first convicted and sentenced to death in November 2003. Following the 2003 trial, Rubio pursued state habeas relief before then-state Judge Olvera. In that capacity, Judge Olvera recommended denial of relief on all of Rubio's state habeas claims. In Texas, state collateral review begins when the conviction and sentence remain pending on direct review. Judge Olvera's recommendation was never adopted because, in 2007, the Texas Court of Criminal Appeals (TCCA) exercised its power over the direct appeal to vacate the 2003 conviction and sentence—based on a Confrontation Clause violation. *Rubio v. State*, 241 S.W.3d 1 (Tex. Crim. App. 2007). The state post-conviction recommendations were never evaluated by the TCCA.

In 2010, Rubio was again convicted and sentenced to death, and that is the criminal judgment at issue here. Following the 2010 trial, Rubio pursued relief in state habeas and direct appeal proceedings. This time, Judge Noe Gonzalez presided

1

over the state habeas proceeding, and he recommended denial of relief on all state habeas claims. The TCCA adopted that recommendation. *Ex parte Rubio*, 2018 WL 2329302, *4 (Tex. Crim. App. May 23, 2018).

Rubio's case subsequently moved into federal court, and the case was assigned to now-federal Judge Olvera. Counsel for the Director entered an appearance on June 8, 2018. ECF No. 2. Judge Olvera signed his first order that same day, ECF No. 3, appointing undersigned counsel pursuant to 18 U.S.C. § 3599. On September 4, 2019, Rubio filed his initial federal habeas petition. ECF No. 17. On February 18, 2020, he filed his first amended petition. ECF No. 24. The Director answered with a Motion for Summary Judgment on June 17, 2020. ECF No. 30. On November 16, Rubio filed a motion to stay the federal proceedings under *Rhines v. Weber*, 544 U.S. 269 (2005), to allow him to exhaust any previously unexhausted claims in state court. ECF No. 42.

On January 13, 2021, while the *Rhines* motion remained pending, Judge Olvera filed an Advisory noting his involvement in the state habeas proceedings related to Rubio's 2003 trial. ECF No. 52. Three weeks passed without either party filing a response to Judge Olvera's Advisory. On February 3, Judge Olvera granted Rubio's request for a *Rhines* stay, sending the case back to state court. ECF No. 53. That particular type of stay requires a conclusion that the claims in the petition not be meritless. *Rhines*, 544 U.S. at 277 ("[T]he district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless[.]"). The order also instructed Rubio to file an advisory with the Court every ninety days,

advising it of the status of the litigation that would be pending in state court. ECF No. 53.

Rubio then returned to state court, where he filed a subsequent state habeas application—thereby exhausting all claims that had been unexhausted when he filed his first amended federal petition. On January 26, 2022, the TCCA dismissed the subsequent state application without reaching the merits of the claims therein. *Ex parte Rubio*, 2022 WL 221485 (Tex. Crim. App. Jan. 26, 2022). On February 22, this Court signed an order reopening Rubio's federal proceeding. ECF No. 57. On March 14, approximately fourteen months after Judge Olvera's Advisory and over three-and-a-half years after Judge Olvera signed the first order in this case, the Director filed the Recusal Motion. ECF No. 58.

**ARGUMENT**

Recusal motions are "committed to the sound discretion of the district judge," *Chitimacha Tribe of Louisiana v. Harry L. L. Co.*, 690 F.2d 1157, 1166 (5th Cir. 1982), and this Court should decline to exercise that discretion here. The Director asserts roughly three bases for recusal, depending on how they are counted. Specifically, he argues that Judge Olvera should recuse: (1) under 28 U.S.C. § 455(a), because of the appearance of bias; (2) under 28 U.S.C. § 455(b)(3), because he expressed a judicial opinion in the earlier state habeas litigation over the 2003 conviction; and (3) under 28 U.S.C. § 47, because that provision—which only bars federal judges from deciding federal appeals taken from trial court judgments—has some penumbral effect here. None of these arguments has merit, for interrelated reasons. First, Judge Olvera's

*judicial* role in a *prior* case is generally outside the scope of the disqualification rules. Second, there is neither actual nor the appearance of bias here, because Judge Olvera's prior adjudication was *adverse to Rubio*. The Recusal Motion is so light on authority because the decisional law makes it abundantly clear that the Motion is without merit. Of course, this Court should not even reach the merits of the Motion, because the Director has delayed this request inexcusably.

I. **THIS MOTION SHOULD BE DENIED FOR INEXCUSABLE DELAY.**

Recusal motions must be timely. *See United States v. York*, 888 F.2d 1050, 1055 (5th Cir. 1989). In the Fifth Circuit, "it is well-settled that—for obvious reasons—one seeking disqualification must do so at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *Travelers Ins. Co. v. Liljeberg Enterprises, Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994); *see also Grambling v. Board*, 286 F. App'x 864, 867 (5th Cir. 2008) ("Section 455 does not contain an explicit timeliness requirement. Nevertheless, this Court has consistently inferred such a requirement."). Applying this rule, the Fifth Circuit has found that even delays of five months can be untimely. *See, e.g.*, *United States v. Brocato*, 4 F.4th 296, 305 (5th Cir. 2021) (finding a 6-month delay to be a "relevant circumstance," though not dispositive, when affirming denial of recusal motion); *Thaneder v. Time Warner, Inc.*, 352 F. App'x 891, 901 (5th Cir. 2009) (finding a 5-month delay in filing recusal motion to be untimely).

Here, the basis for the Director's recusal motion—Judge Olvera's involvement in the state habeas proceeding following Rubio's 2003 trial—was clearly discoverable

from the state court record in this case. Counsel for the Director entered an appearance on June 8, 2018. ECF No. 2. Judge Olvera also signed his first order in this case on that same day, ECF No. 3, but the Director waited nearly four years to move for recusal. Rubio filed an initial petition on September 4, 2019, ECF No. 17, and the Amended Petition on February 18, 2020, ECF No. 24. The Director answered and moved for summary judgment on June 17. ECF No. 30. Even construing the circumstances in the Director's favor, he presumably reviewed the record and should have known about Judge Olvera's role in the litigation when the responsive motion for summary judgment was filed.[1] If the Director had constructive knowledge of Judge Olvera's role by June 17, 2020, then he waited nineteen months to move for recusal.

Finally, even under *the most* charitable timeline, the Director *still* waited fourteen months after receiving formal notice from Judge Olvera on January 13, 2021. ECF No. 52. And, perhaps most telling, it is only after Judge Olvera granted Rubio's *Rhines* Motion—rejecting the Director's arguments that Rubio's habeas petition was frivolous—that the Director finally moved for recusal. The Fifth Circuit has expressed its disapproval of such timing in no uncertain terms: "The most egregious delay—the closest thing to *per se* untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits

---

[1] It was Judge Olvera's *own* review of the state court record filed by the Director that prompted him to issue the Advisory. *See* ECF No. 52.

5

until after an adverse decision has been made by the judge before raising the issue of recusal." *United States v. Sanford*, 157 F.3d 987, 988–89 (5th Cir. 1998).

The Recusal Motion includes language suggesting that the Director intends to argue that something about the administrative closure during state exhaustion excuses the substantial delay. ECF No. 58 at 1. But there is nothing that prevented the Director from timely requesting recusal at any point during the last fourteen months. While the Court "administratively closed" the case in its *Rhines* Order, ECF No. 53, administrative closure did not prevent the Court from accepting filings from the parties. ECF No. 58 at 1. Administrative closure is just a docket management tool and does not have any effect on a court's jurisdiction. "[T]he administrative closure reflects nothing more than the federal courts' overarching concern with tidy dockets; it has no jurisdictional significance." *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 714 (5th Cir. 2002) (Dennis, J. concurring). This understanding of administrative closure is commonly referenced in *Rhines* orders in § 2254 habeas cases. *See, e.g.*, *Cade v. Lumpkin*, 2020 WL 4877586, *2 (N.D. Tex. Aug. 19, 2020) ("The Clerk is directed to administratively close this case for statistical purposes but nothing in this memorandum opinion and order shall be construed as a final dismissal or disposition of this case."); *Seery v. Director, TDCJ-CID*, 2016 WL 5928888, *2 (E.D. Tex. Oct. 11, 2016) ("It is . . . ordered that the above-styled application for the writ of habeas corpus is administratively closed and placed on an inactive docket for administrative and statistical purposes. . . . This administrative closing shall have no effect upon the substantive rights of any party."). An order of administrative closure does not prevent

6

either party, or the court, from restoring the case to the court's active calendar upon an appropriate application. *See Penn West Assoc., Inc. v. Cohen*, 371 F.3d 118, 127 (3d Cir. 2004). Indeed, at the request of this Court, Rubio filed two advisories during the time that his subsequent state habeas application was pending before the TCCA. *See* ECF Nos. 54-55.

Under the Fifth Circuit's well-settled timeliness requirement, the Director's motion should be denied for unreasonable delay. The Director cannot sit on his recusal motion for years on end, only to make it at some later time, when new information may drive a preference for a different judge. Fourteen months is unreasonable delay, and forty-three months is beyond the pale.

## II. JUDGE OLVERA'S RECUSAL IS NOT REQUIRED BY 28 U.S.C. § 455(b)(3).

28 U.S.C. § 455(b)(3) requires that a federal judge recuse when "he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]" The Director argues that Judge Olvera's participation in the state habeas proceedings related to Rubio's now-vacated 2003 conviction disqualifies him from presiding over federal review of Rubio's 2010 trial. ECF No. 58 at 2–3. Judge Olvera has not served as a "counsel, adviser or material witness concerning the proceeding," so the Director's argument focuses on the judicially expressed "opinion" in Judge Olvera's recommendation against Rubio in the litigation over the 2003 conviction. The Director's argument is inconsistent with the plain text of the statute, and with the precedent confirming its meaning.

7

Section 455(b)(3) does contemplate recusal when a judge has either engaged in certain specified activity "concerning the proceeding" or "expressed an opinion concerning the merits of the *particular* case in controversy" (emphasis added), but the Director ignores the word "particular." The leading civil procedure treatise explains the significance of that omission: "One court . . . concluded, correctly it seems, that 'concerning the proceeding' is broader than 'the particular case in controversy,' and that the latter is satisfied only when the judge's expression of opinion concerned the same case, and not merely a related one." § 3544 Grounds for Disqualification—Prior Association with the Case, 13D Fed. Prac. & Proc. Juris. § 3544 (3d ed.) ("WRIGHT AND MILLER"). The Director's argument therefore glosses over a critical distinction—namely, that Rubio's 2003 conviction and sentence is not a proceeding in this federal case. Judge Olvera is not being called upon to consider his earlier recommendations.

Moreover, the Director provides no pertinent authority for the proposition that Judge Olvera's involvement in the state habeas proceedings of a since-vacated conviction and sentence precludes him from federal review of an entirely different trial. Indeed, the prior "governmental employment" during which expressed opinions can trigger § 455(b)(3) does not refer to prior *judicial* activity. *See In re Kramer*, 64 B.R. 531, 532 (B.A.P. 9th Cir. 1986) ("This obviously refers to opinions expressed as a government employee before taking the bench. . . . [A] judge is not disqualified by comment or expression of opinion gained solely from evidence in the case.") (citing *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1329 (8th Cir.1985), *Mayes v.*

*Leipziger*, 729 F.2d 605, 607 (9th Cir.1984)). The Director's only authority on this point is *Magnum v. Hargett*, 67 F.3d 80, 83 (5th Cir. 1995), wherein the Fifth Circuit held that the federal habeas judge's previous employment at the county district attorney's office at the time of the plea bargain at issue did not disqualify the judge from presiding over the federal habeas proceeding. In its reasoning, the court suggested that, had the judge "actually participated[d]" in the plea bargain at issue, then the result might be different. *Id.* That is certainly consistent with law, but it is not relevant here. As explained above, "active participation" as a nonjudicial employee is covered by § 455(b)(3)'s reference to prior governmental employment, but a person's role as a judge is not.

If the Director's argument that a judge who heard a different case involving the same criminal transaction were taken seriously, then federal district judges should have spent the last seventy years regularly recusing themselves in collateral attacks under 28 U.S.C. § 2255. Section 2255 is a post-conviction motion, functionally identical to a habeas corpus petition, attacking a conviction. The primary difference between a § 2254 habeas proceeding (state convictions) and a § 2255 post-conviction proceeding (federal convictions) is that the § 2255 proceeding takes place before the federal trial judge. *See* Rule 4(a) Governing Section 2255 Cases ("2255 Rules") ("The clerk must promptly forward the motion to the judge who conducted the trial and imposed sentence or, if the judge who imposed sentence was not the trial judge, to the judge who conducted the proceedings being challenged."). As the text of § 2255 Rule 4(a) makes clear, the *whole point* of the assignment rule is to put the post-conviction

9

litigation in the court of the judge whose proceedings are being attacked. The persistence of this practice illustrates the absurdity of the Director's position—there exists no such wholesale rule of recusal because the Director's interpretation of § 455(b)(3) is wrong. Section 2255 recusals are available only upon showing of actual bias against a recusal movant. The Revisor's Note to Rule 4(a) explains that "[a] movant is not without remedy if he feels [that having the trial judge hear his section 2255 motion] is unfair to him. He can file an affidavit of bias. And there is the right to appellate review if the trial judge refuses to grant his motion." The Director does not even bother to file an affidavit of bias here, because any bias or appearance thereof would be *in the Director's favor*. Section 2255 Rule 4(a) reflects the fact that, in the absence of bias against the movant, it is "highly desirable" to have a federal judge adjudicate the lawfulness of their own prior proceeding, because they are familiar with the facts. *Carvell v. United States*, 173 F.2d 348, 348–49 (4th Cir. 1949) (forming basis for policy reflected in § 2255 Rule 4(a)).

### III. JUDGE OLVERA'S RECUSAL IS NOT REQUIRED BY 28 U.S.C. § 455(a).

The Director also asserts that Judge Olvera should recuse under 28 U.S.C. § 455(a), an appearance-of-bias rule that provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." ECF No. 58 at 3–5. At the outset, it is again worth emphasizing that the federal habeas proceeding does not involve the 2003 conviction, which is the trial made subject to the collateral proceeding over which Judge Olvera presided. And there are at least two other reasons why the

10

Director is wrong. First, there is a substantial safe harbor when the basis for recusal involves a prior judicial role. Second, nobody can "reasonably" flag bias *against the Director* because Judge Olvera's expressed opinion was squarely *against Rubio*.

Start with the safe harbor, and the Director frankly acknowledges its existence: "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." ECF No. 58 at 5 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Any prior rulings made by Judge Olvera in a *prior* proceeding not arising from the same case in state court falls squarely in the *Liteky* safe harbor. *See Andrade v. Chojnacki*, 338 F.3d 448, 455 (5th Cir. 2003) ("Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.") (citing *Liteky*, 510 U.S. at 555). In other words, § 455(a) "guard[s] against personal, extrajudicial bias or the appearance of partiality arising out of such bias." *In re Corrugated Container Antitrust Litigation*, 614 F.2d 958, 965 (5th Cir. 1980). Indeed, *Corrugated Container* is the leading circuit authority on this question, and could not be clearer:

> No court has yet faced the precise issue presented here the effect of James rulings upon the legal propriety of a judge presiding over subsequent related proceedings. The issue, however, is not generically novel. We believe this situation not unlike countless others in which district judges become thoroughly immersed in all aspects of a case, rule on the admissibility of evidence and on its sufficiency to permit a jury to determine the litigation's outcome, and even form conclusions on ultimate facts involved and then later preside at trials involving the same facts and/or the same parties. As long as judges are not disqualified under these circumstances and overwhelming authority

11

indicates that they are not we have no difficulty in holding that Judge Singleton's James rulings in the criminal trial do not require his disqualification.

*Id.* at 964; *see also Davis v. Bd. of Sch. Comm'rs of Mobile Cty.*, 517 F.2d 1044, 1052 (5th Cir. 1975) ("The determination should also be made on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context.").

The Director tries to avoid *Liteky*'s explicit recognition of the judicial safe harbor, suggesting that the safe harbor does not cover work done as a *state* judge. But there is not *one iota* of authority for making a safe-harbor distinction between state and federal judges, and the Director does not even try to cite any. Instead, at the moment that the Motion would seem to require such, the Director abruptly shifts focus to 28 U.S.C. § 47—the federal statute barring United States circuit judges from hearing appeals of their own district court judgments—and suggests that § 47 reflects "concerns" that might support disqualification. ECF No. 58 at 5. This Response addresses the § 47 argument below, but for now it suffices to say that whatever the penumbral emanations the Director sees in § 47, they do not wipe out a piece of the safe harbor for disqualification under § 455(a). They pertain to a completely separate provision.

It is true that the judicial safe harbor can be pierced in rare circumstances; the Director's problem is that the circumstances here are not anywhere near those needed to pierce. Specifically, the safe harbor *may* be pierced where the judge's opinion "derives from an extrajudicial source," and it *should* be pierced if the opinions "reveal such a high degree of favoritism or antagonism as to make fair judgment impossible."

*Liteky*, 510 U.S. at 555. And in *Liteky*, the movant in seeking recusal cited to clear examples where "the judge had displayed impatience, disregard for the defense and animosity towards [the defendant]." *Id.* at 542 (internal quotations removed). Here, the Director points to nothing other than Judge Olvera's mere involvement in a separate case to suggest that there is an appearance of partiality. Ultimately, like in *Liteky*, any findings and rulings made by Judge Olvera in Rubio's prior case consist of "judicial rulings" and "routine trial administration efforts" and "neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Id.* at 556.

Finally, consider the directionality of the ruling, and how it affects the analysis. Given that Judge Olvera's previously expressed opinion was *against Rubio*, no reasonable person would fear bias against the Director. And the directionality of the prior ruling matters because the standard is the *reasonableness* of perceived bias: "disqualification should follow if the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality." *Potashnick v. Port City Const. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980); *see also Chitimacha Tribe*, 690 F.2d at 1165 ("The movant must show that, if a reasonable man knew of all the circumstances, he would harbor doubts about the judge's impartiality.").

The Director's argument under § 455(a) is bereft of merit. Judge Olvera is not reviewing his handiwork in the same case, and even if he were then he would still qualify for the judicial safe harbor. Moreover, no reasonable person could perceive

13

bias *against the Director*, given that Judge Olvera ruled against Rubio during state collateral review of the 2003 conviction.

### IV. JUDGE OLVERA'S RECUSAL IS NOT REQUIRED BY 28 U.S.C. § 47.

The Director briefly alludes to another statute, 28 U.S.C § 47. Section 47, which is entitled "Disqualification of trial judge to hear appeal," provides: "No judge shall hear or determine an appeal from the decision of a case or issue tried by him." Obviously, Judge Olvera is not being asked to hear an appeal from a district court holding, so § 47 does not itself require recusal. To escape the plain text of the statute, the Director invokes the idea that § 47 has some sort of penumbra, arguing that "this situation implicates the concerns underlying" the provision. ECF No. 58 at 5. "As in a Section 47 recusal," the Director writes, "Judge Olvera may be asked by the parties to confirm or reject his own determinations of facts or the issues in this case." *Id.*

This proceeding and the proceeding in which Judge Olvera signed findings are not the same case. It is not the same case not only in the sense that federal and state post-conviction proceedings are separate cases; it is also not the same case because the federal proceeding here and the prior state proceeding involve completely different convictions and sentences. In the Fifth Circuit, Judge Olvera's role in the first state post-conviction and then his role in the federal habeas proceedings following the 2010 trial do not qualify as the same "case" for disqualification purposes. *See Lee v. United States*, 91 F.2d 326, 332 (5th Cir. 1937) (rejecting a motion to disqualify in case where same issue involving the same defendant and criminal transaction was presented in habeas corpus proceeding and in direct appeal from

14

conviction). And because it is not actually the same case, in any sense of the word, Judge Olvera is not being asked to "confirm or reject his own determination of facts or . . . issues[.]" ECF No. 58 at 5.

Finally, the idea that this Court should give some penumbral effect beyond the clear bounds of the statute is odd. If Congress wanted § 47 to sweep more broadly than it did, then it certainly knew how to write the statutory language accordingly. Statutory language reflects both animating purposes and limiting ones, and the judiciary should not lightly extend the boundaries of statutory language beyond what the text can bear. Distorting the operation of § 47 here is exceptionally difficult to justify, given the fact that judicial recusal is subject to the thick regulation of other statutory and decisional law. If the text of and decisions interpreting §§ 455(a) & 455(b)(3) clearly foreclose the Director's recusal argument, then there can be no serious theory that some "policy" behind § 47 should trump that law.

## CONCLUSION

For the reasons set forth above, the Director's Recusal Motion should be denied as untimely and because it is without merit.

Respectfully Submitted,

DATE: April 4, 2022

| | |
|---|---|
| */s/ Lee Kovarsky* | JASON D. HAWKINS |
| Lee B. Kovarsky | Federal Public Defender |
| *Principal* | |
| Texas Bar No. 24053310 | JEREMY SCHEPERS |
| 727 East Dean Keeton St, Jon 5.231 | Supervisor, Capital Habeas Unit |
| Austin, TX 78705 | |
| 434-466-8257 (tel.) | */s/ Derek VerHagen* |
| l.kovarsky@phillipsblack.org | Derek VerHagen (TX 24090535) |
| | Assistant Federal Public Defender |
| */s/ Kristin Swain* | |
| Kristin Swain | Office of the Federal Public Defender |
| *Associate* | Northern District of Texas |
| Phillips Black, Inc. | 525 S. Griffin St., Ste. 629 |
| PO Box 8745 | Dallas, TX 75202 |
| Saint Louis, MO 63101 | 214-767-2746 |
| (888) 532-0897 | 214-767-2886 (fax) |
| k.swain@phillipsblack.org | derek_verhagen@fd.org |

*Counsel for Petitioner*

## CERTIFICATE OF SERVICE

On April 4, 2022, a copy of the foregoing response was served upon Stephen Hoffman, Assistant Attorney General, via the CM/ECF system.

*/s/ Derek VerHagen*
Derek VerHagen
